**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ADMIRAL INSURANCE COMPANY,

Plaintiff,

vs. CASE NO:

KENDALL MEDICAL CENTER, INC.,
MARIA ORTEGA, and MAYELIN KING,
as Personal Representative of the Estate of
David King, deceased, and on behalf of herself
and the surviving minor child N.K.,

Defendants.
_______________________________________/

**COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

ADMIRAL INSURANCE COMPANY ("Admiral") sues KENDALL MEDICAL CENTER, INC. ("KMC"), MARIA ORTEGA, and MAYELIN KING as Personal Representative of the Estate of David King on behalf of herself and the surviving minor child N. K., and alleges:

**NATURE OF ACTION**

1. This is an action for damages and declaratory relief under 28 U.S.C. § 2201 to determine whether coverage exists under a 2016 claims-made and reported policy issued by Admiral for a medical malpractice Claim that was first made against KMC in 2014.

**JURISDICTION AND VENUE**

2. Jurisdiction exists under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this district because all defendants reside in this district. 28 U.S.C. § 1391(b)(1). Moreover, a substantial part of the events giving rise to the claim occurred in this district. 28 U.S.C. § 1391(b)(2). Specifically, the underlying malpractice incident occurred in this district and the underlying lawsuit is pending in this district.

4. All conditions precedent have occurred, been performed, or have been waived.

**THE PARTIES**

5. Admiral is a Delaware corporation with its principal place of business in New Jersey. For this lawsuit, Admiral is a surplus lines insurance company under Fla. Stat. §§ 626.913 - 626.937 that issued a claims-made and reported medical professional liability policy to KMC.

6. KMC is a Florida corporation with its principal place of business in Florida. KMC operates a primary care, family medical practice in Miami, Florida and is a defendant in the underlying action.

7. Ortega is a Florida citizen. She is an advanced registered nurse practitioner and a former employee of KMC. She is a defendant in the underlying action.

8. Mayelin King is a Florida citizen. She is the plaintiff in the underlying action. She sued on behalf of herself and as the legal representative of her husband David King's estate and her minor daughter N.K. David King was a citizen of Florida. N.K. is a citizen of Florida.

**COMMON ALLEGATIONS**

9. ***THE 2014 MEDICAL MALPRACTICE CLAIM AGAINST KMC:*** David King was a patient of Dr. Melvin Sarnow and Ortega at KMC. David King died on May 13, 2014, one month after being diagnosed with colon cancer.

10. In 2014, Mayelin King made a medical malpractice claim against KMC and Ortega for failing to treat and diagnose Mr. King's colon cancer (the "2014 Claim").

11. The 2014 claim arose out of allegedly negligent care provided to Mr. King by KMC, its medical director Dr. Melvin Sarnow, its nurses, and its staff.

12. In 2014, to respond to the 2014 Claim, KMC and Ortega conducted a good faith, pre-suit investigation and ultimately denied that they were negligent in causing or contributing

to Mr. King's death.

13. KMC and Ortega's investigation included retaining a medical doctor and nurse practitioner certified in family practice to conclude that neither KMC nor Ortega was negligent in treating Mr. King.

14. ***THE 2016 MEDICAL MALPRACTICE LAWSUIT:*** Mayelin King sued KMC and Ortega in circuit court in Miami-Dade County, Florida in an action bearing Case No. 2016-016379-CA-01. A copy of the amended complaint is attached as Exhibit "A."

15. The amended complaint contains two counts against KMC and three counts against Ortega for negligently treating Mr. King and causing his death.

16. ***KMC'S APPLICATION FOR INSURANCE WITH ADMIRAL AND ITS FAILURE TO DISCLOSE THE 2014 CLAIM, 2014 INVESTIGATION, OR ITS 2014 DENIAL:*** On February 12, 2016, KMC applied for a brand new, claims-made and reported medical professional liability policy with Admiral. The signed application is attached as Exhibit "B."

17. The application included this question in the Claims Information section:

**VI. CLAIMS INFORMATION**

Has any claim or suit for alleged malpractice ever been brought against you, or are you aware of circumstances that might reasonably lead to such a claim or suit? ☐ Yes ☒ No If yes, complete a claims supplement for each claim. Total Number of Claims Open Closed

18. KMC answered "No."

19. KMC failed to identify David King's death, Mayelin King's 2014 Claim, its 2014 Investigation, or its 2014 Denial.

20. In the application, KMC was warned that any falsification or material inaccuracy would result in a lack of coverage for a future claim under the new Admiral policy:

I understand that falsification or material inaccuracy of any part of the above information can result in the immediate cancellation of my policy, and that no claims shall be paid nor coverage provided in the event of such falsification or material inaccuracy.

21. The application also made clear that all information requested was considered material and important.

22. KMC signed the application, certifying that it had no knowledge of any incidents, pending claims, or any other activities that might result in a claim other than those listed in the application:

> I hereby certify that the above information is correct, and that I have no knowledge of any incidents, pending claims, or any other activities that might result in a claim other than those listed on this application. I authorize release and exchange of information involving underwriting or claims matters among insurance carriers.
>
> 2/12/16
> Date
>
> x
> Applicant's Signature
>
> Signing this application does not bind any carriers to complete the insurance. All information requested in this application is considered material and important. If any carrier agrees to be bound under the terms of this application, your policy is void if you withhold any information from us, mislead us, or attempt to defraud or lie to us about any matter contained in this application.

23. The application identified Dr. Melvin Sarnow as KMC's Corporate Medical Director.

24. ***THE NEW, 2016 ADMIRAL POLICY:*** Based on the representations in the application, Admiral issued a claims-made and reported medical professional liability policy to Kendall Medical Center, Inc. as the Named Insured, bearing Policy No. EO000032427-01, and effective from February 15, 2016 through February 15, 2017. A copy is attached as Exhibit "C."

25. The policy's insuring agreement, located in Form EO 09 55 03 13, provides that Admiral pays for covered "claims" resulting from a "professional incident," but only if first made against the insured and reported to Admiral during the same policy period, specifically:

> THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ THIS POLICY CAREFULLY. OUR LIMIT OF LIABILITY AVAILABLE WILL BE REDUCED BY THE AMOUNTS PAID FOR DAMAGES AND CLAIMS EXPENSES. …
>
> In consideration of the premium paid, in reliance upon the statements in the Application which is made a part of this policy and subject to the terms and conditions of this policy, the Company agrees with the **Named Insured** as follows:
>
> **I.** INSURING AGREEMENTS

**A.** We will pay on behalf of the **insured** those amounts which the **insured** is legally obligated to pay as **damages** caused by a **professional incident** taking place within the policy territory and subsequent to the retroactive date and prior to the expiration or termination date of this policy, for which a **claim** is first made against the **insured** during the **policy period** and reported to us in writing during the **policy period** or any applicable extended reporting period, as described in Section VI Extended Reporting Period; provided that prior to the inception date of this policy, no **insured** knew, nor could have reasonably foreseen, that the **professional incident** might result in a **claim.**

**B.** We have the right and duty to defend any **claim** brought against the **insured** seeking damages caused by a **professional incident** to which this insurance applies**,** including the right to appoint counsel to defend the **insured**, and will do so even if any of the allegations of the **claim** are groundless, false or fraudulent. We may make such investigation and settlement of any **claim** as we deem expedient. Our right and duty to defend ends when we have used up the applicable Limits of Liability in the payment of **damages** and/or **claims expenses** or have tendered the applicable Limits of Liability to a court of competent jurisdiction. We have no obligation or duty to defend any **claim** for which coverage is excluded hereunder or not otherwise afforded by this policy and we are not obligated to pay any **claim expenses** incurred by the **insured** in the defense of any **claim** not covered by this policy.

26. The policy includes this Medical Director Exclusion:

**V.** EXCLUSIONS

This policy does not apply to: …

**B.** **Professional services** provided by a **Medical Director** involving **direct patient care**;

27. The policy also includes these pertinent definitions:

**C.** **Claim** means:

**1.** a written demand received for money or services by any **insured** resulting from a **professional incident**. …

**F.** **Direct Patient Care** means examination, diagnosis, testing and/or the treatment of any patient. …

**H.** **Medical Director** means a healthcare professional employed or contracted by you in an administrative capacity. …

**M.** **Professional Incident** means a negligent act, error or omission in the rendering of or failure to render **professional services** by the **insured** or a person acting under the **insured's** direction, control or supervision and for whose acts, errors or omissions the **insured** is legally liable. All **professional incidents** that are logically or causally connected will be deemed one **professional incident** that,

> for the purpose of determining coverage under this policy, occurred at the time of the earliest act, error or omission.
>
> **N. Professional Services** means services performed by an **insured** for others involving specialized training, knowledge and skill while in the pursuit of the business stated in the Declarations. …

28. The Conditions section includes a provision making clear that the statements in the application are the material representations of all insureds, upon which Admiral relied in issuing the policy:

> **H.** Application
>
> The statements made in the Application are all **insureds'** representations and are deemed material. This policy is issued based upon the truth and accuracy of such representations. Upon the binding of coverage, the application shall be attached and become part of this policy.

29. Admiral is defending KMC and Ortega in the underlying action under a complete reservation of rights.

**COUNT I – NO COVERAGE BECAUSE THE 2014 CLAIM WAS FIRST MADE BEFORE THE 2016 POLICY PERIOD**

30. Admiral repeats paragraphs 1 through 29.

31. Under the insuring agreement, coverage exists for only a claim that is first made during the policy period and also reported to Admiral during the same policy period.

32. The 2014 Claim against KMC and Ortega was first made prior to the 2016 Admiral policy period.

33. Accordingly, Admiral has no duty to defend or indemnify KMC or Ortega.

**COUNT II – NO COVERAGE BECAUSE, PRIOR TO 02/15/16, AN INSURED KNEW, OR COULD REASONABLY FORESEE, THAT DAVID KING'S DEATH MIGHT RESULT IN A CLAIM**

34. Admiral repeats paragraphs 1 through 29.

35. The policy's insuring agreement requires that, prior to the February 15, 2016 inception date, no insured knew, or could reasonably have foreseen, that a professional incident

might result in a claim.

36. Prior to February 15, 2016, an insured knew or could reasonably foresee that the circumstances surrounding David King's medical treatment and subsequent death might result in a claim for malpractice.

37. Consequently, Admiral has no duty to defend or indemnify KMC or Ortega.

**COUNT III – NO COVERAGE BASED ON A MATERIAL MISREPRESENTATION**

38. Admiral repeats paragraphs 1 through 29.

39. The application, which was signed on February 12, 2016 and formed a part of the policy, provides that no claims shall be paid nor coverage provided for any falsification or material inaccuracy of any information provided.

40. The application further provides that all information requested is considered material and important.

41. In the Claims Information section of the application, KMC represented that no claim or suit for alleged malpractice has ever been brought against it.

42. KMC further represented that it was not aware of any circumstances that might reasonably lead to a claim or suit for malpractice.

43. By signing the application, KMC certified that all the information was correct and that KMC had no knowledge of any incidents, pending claims, or any other activities that might result in a claim.

44. KMC had knowledge of Mayelin King's 2014 Claim as well as circumstances involving David King's 2014 death that might result in or lead to a claim or suit for malpractice when it executed the application.

45. Accordingly, as of the inception date of the policy, KMC knew the information

contained in the application was untrue, inaccurate, or incomplete.

46. The statements in the application were the representations of all the insureds under the policy.

47. Consequently, Admiral has no duty to defend or indemnify KMC or Ortega.

**COUNT IV – NO COVERAGE BASED ON THE MEDICAL DIRECTOR EXCLUSION**

48. Admiral repeats paragraphs 1 through 29.

49. Dr. Melvin Sarnow is KMC's medical director.

50. Dr. Melvin Sarnow was David King's primary care physician.

51. Dr. Melvin Sarnow examined, treated, tested, and diagnosed David King as his patient at KMC.

52. Moreover, the 2014 Claim and the lawsuit allege that Dr. Melvin Sarnow failed to diagnose David King's colon cancer.

53. The 2014 Claim and the lawsuit arise out of professional services provided by a medical director involving direct patient care.

54. Consequently, Admiral has no duty to defend or indemnify KMC or Ortega.

## REQUESTED RELIEF

**WHEREFORE**, Admiral respectfully requests this Court:

**a.** Take jurisdiction and adjudicate the rights of the parties under the policy;

**b.** Find and declare that Admiral has no duty to defend or indemnify KMC or Ortega under the policy because the 2014 Claim was made prior to the policy period;

**c.** Find and declare that Admiral has no duty to defend or indemnify KMC or Ortega under the policy because, prior to the policy's inception, KMC or Ortega knew or could reasonably foresee that David King's death might result in a Claim;

**d.** Find and declare that Admiral has no duty to defend or indemnify KMC or Ortega under the policy based on KMC's material misrepresentations and omissions in its application for insurance;

**e.** Find and declare that Admiral has no duty to defend or indemnify KMC or Ortega based on the Medical Director Exclusion;

**f.** If there is no coverage, against KMC and Ortega, award Admiral all attorney's fees and costs incurred by Admiral to defend KMC and Ortega in the underlying action; and

**g.** Award Admiral all costs it incurred to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/SINA BAHADORAN

**SINA BAHADORAN**
Florida Bar No. 523364
sbahadoran@hinshawlaw.com
**MICHAEL D. FORD**
Florida Bar No. 89539
mford@hinshawlaw.com
2525 Ponce de Leon Boulevard
4th Floor
Miami, Florida 33134
Telephone: (305) 358-7747
Facsimile: (305) 577-1063